## RANNEY v. HENRY.

1. PRINCIPAL AND AGENT — BROKERS — GOOD FAITH — FIDUCIARY
   RELATIONS.
   A broker is bound to exercise good faith with his principal,
   who is entitled to frankness and openness of treatment, free
   from concealment of material facts.

2. SAME—FRAUD—RATIFICATION—ESTOPPEL.
   The sale of real estate by a broker to a customer who had been
   expressly excepted by the owner from the persons to whom
   the broker might sell, does not entitle the broker to commis-
   sions on any theory of estoppel or ratification where he took
   the contract for the purchase of the land in his own name,
   informed the owner that the actual purchaser had no interest
   in the transaction, and where the owner had previous deal-
   ings with another broker and the purchaser which might
   create a further liability for commissions.

Error to Wayne; Murfin, J.  Submitted December 14,
1909.  (Docket No. 17.)  Decided April 1, 1910.

Assumpsit by Frederick T. Ranney against Albert M.
Henry and another for commissions on the sale of real
estate.  A judgment for plaintiff is reviewed by defend-
ant Henry on writ of error.  Reversed.

*Hunt & Altland*, for appellant.

*Robson & George*, for appellee.

MONTGOMERY, C. J.  The defendant and his son,
Burns Henry, were the owners of a valuable piece of real
estate on Jefferson avenue, Detroit, and in 1906 they com-
menced negotiations with Mr. and Mrs. E. J. Schmidt
for a sale of the property to them.  The price originally
fixed was $65,000, but this price was reduced from time to
time.  It appears that Mr. Henry had also negotiated with
a Mr. Turnbull, a real estate agent, to assist him in effect-

·ing a sale to the Schmidts. While these negotiations were thus pending, the plaintiff induced Mr. Edward F. Marschner, who was one of the assessors of the city of Detroit, to assist him in procuring a price from the defendant upon the property. Plaintiff testified as follows:

"*Q.* Your object, of course, in getting the assessor of the city of Detroit to call up Mr. Henry, was that he could get as good a price as possible, I presume, from Mr. Henry? * * * Was that your object, or was it not?
"*A.* My object was to see if he could get a fair price. I knew Mr. Henry's price of $60,000 was out of sight."

And on redirect examination:

"*Q.* In other words, that is the way in which you got the price at which Mr. Henry was willing to make the sale?
"*A.* That was it. I knew I could not get that price."

It also appears that Mr. Ranney had had some talk with Mr. Schmidt before he finally met the defendant. Marschner had several talks with the defendant as to the price, offering him first $40,000 and finally asking if he would take $50,000. Defendant replied to ascertain if it was an offer, and it was finally stated that he would accept $50,000, and pay a commission of $1,250. Mr. Marschner then brings Ranney, the plaintiff, into the case for the first time. There is a sharp conflict in the testimony between the plaintiff and the defendant as to whether at the time of the first conversation between plaintiff and defendant Mr. Schmidt was excluded as a customer, defendant testifying that he distinctly stated that he had had negotiations with Schmidt, and that, if plaintiff represented Schmidt, he could not be considered. Plaintiff denies this, but claims that nothing was said in that conversation upon the subject.

Very shortly after the first conversation, plaintiff appeared with a contract running directly to himself upon which $1,000 was to be paid, and the remainder when the title was shown to the satisfaction of counsel. At this conversation plaintiff admits that he was asked whether

Schmidt was interested in the contract, and replied that he was not. He seeks to evade the force of this statement by saying that it was not determined that Schmidt should take it until counsel should pass upon the abstract. This is too clear an evasion and quibble to call for even a characterization. The contract itself provided that no one was to take it until the title was shown to the satisfaction of counsel, and as a matter of fact the property was purchased for Schmidt, and for no one else. He immediately went to Schmidt with the contract, and made an absolute assignment of his right, title, and interest. The examination of the title was thereupon made, and Mr. Schmidt appeared to tender the remaining $49,000 and the defendant consummated the sale.

Upon this state of facts the circuit judge left to the jury the question of whether in the first contract between the plaintiff and defendant, Mr. Schmidt was excluded as a customer, charging the jury, in substance, that if defendant let the plaintiff understand that Mr. Schmidt was eliminated, and that a sale to him would not entitle plaintiff to commission, there could be no recovery. He also charged the jury that, if the contract was made by reason of any fraudulent connivance on behalf of Mr. Ranney or Mr. Marschner, the plaintiff would not be entitled to recover. The court also recognized in his charge the obligation of an agent, which is so well understood as not to require the citation of authorities, to act in good faith in dealing with his principal in all stages of the negotiations. Authorities are cited by defendant's counsel to show that the concealment of the name of a purchaser may be material in certain cases. This was not a case of concealment. It is a case of false statement. The plaintiff not only neglected the duty of being frank and open with his principal, but he actually deceived him and misstated the facts. Courts will not be alert to find means of escape for a person who is guilty of such practices.

The court below, however, was of the opinion that the fact that the defendant concluded the sale to Schmidt and

made a deed after learning of the plaintiff's misrepresentations amounted to a ratification of his acts, and estopped defendant from interposing this defense. We do not agree with this conclusion. The record shows that the defendant had employed another to make a sale of this property to Mr. Schmidt. When Mr. Schmidt had agreed to purchase upon terms which were satisfactory to the defendant, it would apparently be the duty of the defendant to make the deed. In other words, defendant could not withdraw from this dilemma in which he had been placed by the double dealing of the plaintiff, without making himself liable to another agent for commission. Therefore it would seem that the elements of estoppel were lacking. *Barrett* v. *Miller*, 144 Mich., at page 469 (108 N.W. 396).

We think upon this question there was error in the instruction of the circuit judge, and the judgment should be reversed, and a new trial ordered.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.