Vose & Co. v. Stickney.

---

Vose & Company, Appellants, vs. Granville M. Stickney, Respondent.

ERROR TO THE DISTRICT COURT OF WASHINGTON COUNTY.

Where a debtor has the property of a third person in his possession, and is exercising acts of ownership over it, with the consent of the owner, and such property is seized by the sheriff, under process against the debtor, no action can be maintained against the sheriff by the real owner of the property, until notice of his claim has been brought to the sheriff, or demand made upon him, and a refusal or delay in surrendering the property.

*Atwater, J.—Dissents.*

Where goods are delivered to an agent to sell, the latter to have as his commission all he can obtain for them above a specified sum, with an agreement to account to his principal, the agent has not a leviable interest in the goods.

## Points and Authorities of Appellant.

I.—The Defendant could take nothing on his motion for a new trial which was not distinctly presented and passed upon at the trial, and can have nothing here except upon grounds presented before the Court below upon the motion. 11 *Johns.*, p. 70 ; 5 *Wend.*, 620 *and cases;* 6 *Hill*, 407 ; 3 *Hill*, 609 ; 2 *Minn. R.*, 248.

II.—The only question litigable under the pleadings was the right of the Plaintiffs to bring the action *prima facie*.

III.—Defendant was not in a condition, either upon the pleadings or the proof, to controvert the *bona fides* of the transfers from Capron & Morris to Vose & Co., because his claim against Capron & Morris had not been established by the judgment of the Court. 29 *Barb.*, 105, *and cases there cited ;* 23 *Wend.*, 480 ; 4 *Scam.*, 411 ; 25 *Wend.*, 396.

IV.—The only questions in fact litigated upon the trial, as appears from the case, were the integrity of the transfer from Capron & Morris, the value of the property, and the right of the Plaintiff to maintain trespass against the officer.

We have seen that Defendant could not litigate the integrity of the sale ; that the value of the goods was not disputed by the answer. We will consider the last named question hereafter.

V.— Plaintiffs being the general owners of goods, can maintain the action. So might they, being in naked possession, as they were by their agent. 1 *Chitty, p.* 168-9 ; 1 *Wend.*, 466.

VI.—No demand was necessary to maintain this action. 8 *Pick,* 73 ; 5 *do.*, 177 ; 2 *Camp.*, 464 ; 1 *Pick.*, 232, &c.

VII.—It was urged on the motion for a new trial, for the first time, that it appeared from the receipt in evidence, that the judgment debtors were bailees of the property, and had the right of possession ; and therefore the action could not be maintained. The proposition rests upon neither fact, principle, nor authority. 8 *Pick.*, 73 ; 5 *Pick.*, 177 ; 2 *Camp.*, 464 ; 1 *Pick.*, 232, *cited ;* 8 *Pick.*, 333 *et ubique.* These cases cover precisely our facts.

VIII.—It was also claimed, first, on the motion for a new trial, that the Defendants being bailees of the goods, had a leviable interest therein. We have seen in cases precisely analogous cited, supra point seventh, that this proposition has no force.

The right to have commissions upon sales is not a right *in esse ;* the possession was naked and determinable at the will of the Plaintiff, if any possession there was of the judgment debtors,—which we deny,—Mr. Capron being in our store, as our agent, to sell and not otherwise.

Again. The defence is not put on this ground. The Defendant claims that the property belonged to the judgment debtors, and alleges it was so levied upon, and so proves. If this pretence was made, it should have been averred, and the proof should have shown a special levy on the interest of the judgment debtors. 10 *Wend.*, 318, *opinion ;* 4 *Hill*, 293.

We apprehend it to be new doctrine, that goods left for sale with a commission merchant are liable to be seized for his debt.

IX.—It was also urged on the argument of this motion for a new trial, as an afterthought, that the damages recovered were excessive, as it appeared that the Plaintiff had only a limited property in the goods defined in the receipt. The proposition is untrue in fact, and there was no such ground of motion.

If the Defendant desired to avail himself of this ground of objection to the verdict, he should have so notified in his motion, as we have seen before. It is too late to raise new questions here which have not been tried below. 7 *Cowen*, 670, note a, (cited by Respondent); *Sedgwick on Damages*, 482, &c.; 15 *Mass.*, 389 ; 5 *Binney*, 457-60.

*By the Court*—FLANDRAU, J.—The complaint in this case alleges that the Plaintiffs, on the 30th day of June, 1859, were the owners of and had in their possession certain personal property, which is described, and alleged to be of the value of fifteen hundred dollars. It then charges that the Defendant, on said 30th day of June, at Stillwater, &c., wrongfully took and carried away said property, and converted the same to his own use, and demands judgment for the value thereof.

The answer of the Defendant first takes issue upon all the facts stated in the complaint, then alleges that the Defendant is the sheriff of Washington county, and had an attachment at the suit of Shear, Packard & Co., against the property of Capron & Morris. That he seized certain property, describing it, as the property of Capron & Morris, by virtue of the attachment, and alleges the property to belong to the Defendants in the attachment, and to have been in their possession

when he seized it, and that such taking is the same mentioned in the complaint.

The reply reaffirms the charges in the complaint.

It appears from the evidence that in April, 1858, Capron & Morris, being indebted to the Plaintiffs, Vose & Company, executed a chattel mortgage upon certain personal property in their store, in Stillwater, which was the same as that mentioned in the complaint, together with other property. In 1859, June 6th, the agent of the Plaintiffs called on Capron & Morris, and took possession of the property, but did not remove it. At the same time they entered into an arrangement with Capron & Morris, by which the latter were to sell the goods for them and account to them for the proceeds up to a certain sum, and retain all they received over that amount as their commission. On the re-delivery of the goods to Capron & Morris, they executed the following written receipt, which expresses the terms under which they held and were to dispose of them :

"Received of Messrs. Vose & Co., of Albany, New York, the goods, wares, and merchandise mentioned and described in the foregoing pages (referring to an inventory,) to be by us sold for them, upon commission, and the avails thereof, not exceeding the prices specified for said articles, we agree to account to and pay over to said Vose & Co., or their agent or attorney, on demand, and the excess of the avails thereof, on sale, over and above the prices above designated, to be retained by us as our commission.      CAPRON & MORRIS."

"June 6, 1859."

The amount of the goods, as by the inventory made, was $1,015 53.

On the 30th day of June, 1859, the seizure under the attachment was made by the Defendant. The Plaintiffs had a verdict for $1,374, and, on motion for a new trial, the Court set aside the verdict, and granted it. The appeal is from that order.

There are only two points in the case that need consideration by this Court :

*First.*—Whether the Plaintiffs could maintain an action against the sheriff for the seizure of the goods from the pos-

session of Capron & Morris, without demanding them, or showing that the sheriff had notice in some way that they were the property of the Plaintiffs.

*Second.*—Whether the written stipulation under which Capron & Morris held the goods from the Plaintiffs did not give them such a special property in them as amounted to a leviable interest.

There are cases that hold that a Sheriff cannot be subjected to an action for seizing goods in the hands of a debtor, unless they are demanded by the owner, or the Sheriff had notice of the real ownership before he seized them. *See Danmiel vs. Gorham,* 6 *Cal. Rep.,* 43; *Taylor vs. Seymour,* 6 *Cal. Rep.,* 512; *Riley vs. Scannell,* 12 *Cal. Rep.,* 73; *Bond vs. Ward,* 7 *Mass.,* 123; *Shumway vs. Rutter,* 8 *Pick.,* 443. These cases also hold that where the goods of third parties are mixed with those of the debtor, and are seized by the officer, the latter is entitled to similar protection. This rule is founded upon the fact that possession is *prima facie* evidence of ownership, and that he who allows his property to remain in the possession of third persons, must overcome the presumption arising from such possession. There is much reason in the rule, and it is frequently acted upon in regard to chattels under mortgage. Up to the year 1860, where a mortgagor of chattels remained in possession, the mortgage was held to be *prima facie* fraudulent, as against creditors, and since that time all mortgages not accompanied with an actual and continued change of possession of the chattels mortgaged, are absolutely void as against creditors, unless properly filed and proven to have been made in good faith. This question has never been directly presented to us for decision before. We are of opinion that in such cases, where the possession is accompanied by the exercise of acts of ownership over the property by the party in possession, a demand or notice to the Sheriff is necessary to subject him to an action. There is some evidence here that some of the goods were marked in the name of " Vose & Co.", and also that there was a small sign on the side of the door of " Vose & Co." or " Capron & Morris, agents for Vose & Co.", and a similar one on the inside of the store. The evidence in regard to the signs is from the Sheriff himself.

There was also an attempt made by the Plaintiff to show that the Sheriff was forbidden to make the seizure on the ground that the goods were the property of the Plaintiffs, but it was ruled out, on the ground of not being a proper cross-examination, which ruling was correct, and at all events discretionary, it being merely as to the order of the proof. The attempt was not renewed.

From all we can collect from the paper books, it would seem that the Judge entertained the same view of the law as to notice and demand, which we have above laid down. Yet he refused, on the request of the Defendant, to charge the Jury to that effect fully, and the charge, as given, leaves the question in great doubt. Upon this branch of the case the Defendants were, we think, entitled to a new trial. At all events, the case, as it comes to us, leaves so much doubt upon the question as to whether the Defendant had the law given to the Jury correctly, that we would not cut off the re-investigation, the Court below having granted it.

In regard to the relations that arose between Vose & Co. and Capron & Morris, under the receipt upon which the goods were delivered to the latter, we think they were merely the agents of Vose & Co., to sell the goods, taking the chances of obtaining more than the inventory prices as their commission. The interest of Capron & Morris in the goods, if any, depended upon a contingency, and was compensation for services yet to be rendered; and its ultimate acquisition by them rested very much upon their personal skill in the sale of the goods, although their interest was such that they might have defended their possession against wrong-doers and intruders; still it was not, in our opinion, such an interest as could be taken in execution. Their principals could clearly maintain an action against any one who appropriated the goods.

The new trial was properly, under all the circumstances, granted, and the order is affirmed.

ATWATER, J., *dissenting*. I cannot agree with my associates in the view they have expressed in the disposition of this case, with regard to the liabilities of a Sheriff levying pro-

cess　That an officer who seizes the property of B, under and by virtue of a writ against A, becomes thereby a trespasser, I understand to be a cardinal principle, old as the common law, asserted by all elementary writers on this subject, and affirmed by an unbroken current of English and American decisions, whenever the question has been in issue. It would seem unnecessary, at this day, to cite authorities in support of such a proposition. Nor am I aware of any well considered cases, which hold a different doctrine, even under the qualifications stated in the foregoing opinion, to wit; where such property of B is in possession of A, and he is exercising acts of ownership over it. The levy must be made at the absolute risk of the officer, and the law very justly holds him responsible for any excess of his authority, providing, however, in most States, for his indemnity in doubtful cases, where he is required by the creditor to execute the writ. The utmost effect, in my judgment, which could be given to the fact, that the debtor was in possession of and exercising acts of ownership over the property seized, belonging to another would be to allow the circumstance to be shown in mitigation of damages. And even that, I think, would be improper, unless it appeared that the officer had used due, or at least some diligence, to ascertain whether the debtor in fact owned the property, or had the exclusive right of possession. Since it might properly be considered in aggravation of damages if the officer knew, at the time of the seizure, that the property was not that of the Defendant in the writ; as we held, in an analogous case, with regard to exempt property, in *Lynd vs. Picket et al.*, 7 *Minn.*, 184.

If this were now to be considered an open question, and to be settled upon considerations of justice, expediency, or public policy, I cannot but think the weight of argument would be strongly against the view adopted in the opinion of a majority of the Court. The inconveniences which will be suffered from the adoption of such a rule will, I think, be far greater than the counterbalancing advantages, and ought not to be imposed upon the people, except by the plain and unmistakable requirements of law. In the varied social and commercial relations of life, it is evident that a large portion

of community hold, and more or less exercise acts of owner ship over property of others, in which the possessors, for the time being, have no leviable interest. To hold that property, so situated, may be seized in the hands of the debtor, at the will of the officer, and that the real owner can have no redress until after a demand and refusal, would be to reverse all our preconceived ideas of the sacred rights of property, and cause the most grievous inconvenience. A loans or hires his horse or carriage to B, and the sheriff, by virtue of process against the latter, and without inquiry as to the ownership of the property, but simply because he finds it in possession of the debtor, levies upon, and, of course, takes possession of the property. A is subjected to the necessity of searching for his property wherever he can find the officer, and making a demand for what has been thus taken without authority of law, and if delivered up, the officer incurs no liability. It would seem to be no answer to the wrong inflicted on the debtor, by the interference with the prosecution of his business, or on the owner by the seizure of his property, to say that the former should not have sought, nor the latter granted, the temporary possession of the property. Whether the use of the property be conceded to the debtor as an act of friendship, or in some of the ordinary channels of business, the rights of the owner should be no more prejudiced by the limited or qualified possession of the debtor than had such possession not been granted. And it would ill comport with either the friendly or business relations of society to have each man so narrowly watching the affairs of his neighbor, as would be necessary under the view here adopted, in order to render property secure from seizure, loaned for however temporary a purpose. The absolute right of property is not subordinate, but superior to, and resting on a higher basis than that of the officer or creditor, in pursuing his debt. The latter must be done without interference with any rights save those of the debtor, and which the writ authorizes the officer to reach. The writ only authorizes the sheriff to levy upon the property of the Defendant therein—not upon that which may be in his possession. And when the officer goes beyond the terms of his authority, and levies upon the property of another, though

found in the debtor's possession, I can see no principle on which he can claim immunity from the unauthorized act, unless it be that the owner is a wrong doer in suffering his property to be found in the hands of the debtor.

That the doctrine stated in the opinion of the Court was not the law in this State at the time the levy in the case at bar was made, and not until the year 1862, is entirely clear to my mind, by reference to *chap*. 41 *of Sess. Laws* of that year, *p.* 99. *Sec.* 2 of that act provides that "any person having a claim to any property in the possession of the Defendant, in attachment or execution, levied upon by the sheriff, &c., by virtue of a warrant of attachment or execution, shall not have any right of action against such sheriff, &c., for the value of the same, or for damages for the taking, detention, or conversion thereof, unless he or his agent shall give notice, in writing, to such sheriff, &c., so seizing the same, of his claim to such property, before the day of sale thereof, nor shall such person have any right of action against such officer, for taking any such property, or for detaining the same previous to such notice. *Provided*, That if such sheriff, &c., has any notice or knowledge that the property so attached or levied upon belongs to any person other than the Defendant, in the attachment or execution, he shall be liable to the party injured, although the notice aforesaid may not be served upon him."

That this statute is in derogation, and not declaratory of the common law, will not, I think, be disputed, and therefore that the law in this State was not as above stated, until the passage of this act. Whatever may be thought of the policy of such provision, it is doubtless within the scope of legislative action, and must now be accepted as the law of the State.

The doctrine finds as little support in authority as sound reason. So far as I have been able to discover, the decisions of the courts of one State only—those of California—distinctly recognize it, and in the cases cited, *Danmiel vs. Gorham*, 6 *Cal.*, 43, *and Riley vs. Scammell*, 12 *Cal. Rep.*, 73, the principle is merely stated in the opinion of the Court, unsupported by any reasoning, to show upon what grounds so wide a departure from the established practice of courts was based. The case of *Bond vs. Ward*, 7 *Mass.*, 123, holds that "if the

goods of a stranger are in the possession of a debtor, and so mixed with the debtor's goods that the officer, on due inquiry, cannot distinguish them, the owner can maintain no action against the officer for taking them, until notice, and a demand of his goods, and a refusal or delay of the officer to redeliver them." And in *Ward vs. Shumway*, 8 *Pick.*, 443, the statement of the syllabus is, that " where the owner of chattels suffers them to be mixed with those of another person, so that they cannot be distinguished, an officer will not be liable to an action of trespass, (nor, *it seems*, to any action) for attaching them as the property of such other person." The ruling in these cases was not only made upon a different state of facts from that presented in the case at bar, but upon a different (though, perhaps, somewhat analogous) principle from what is claimed as here applicable—that of confusion of goods, which applies to articles, which, from their nature, cannot be distinguished, as grain, &c. The limitations to the right of the officer in levying process, as expressed in the syllabus of those cases, as above quoted, seem to me clearly to show, that the Court did not intend to decide the broad principle laid down by the majority of the Court in this case.

I think a new trial was improperly allowed, and that the order granting it should be reversed.