## MINNESOTA LOAN & TRUST COMPANY v. PETELER CAR COMPANY AND OTHERS.[1]

### February 4, 1916.

### Nos. 19,643, 19,679—(256, 257).

**Mortgage—lien on after-acquired property.**

1. In equity a mortgage of after-acquired property is effective between the parties.

**Same—execution by corporation—authorization.**

2. A mortgage covering "all real estate, buildings, structures, plant and machinery of said grantor, whether now owned, or which may hereafter be acquired by it in the state of Minnesota, including the following described real estate in the county of Hennepin," is sufficient to cover real estate a mile and one-half or two miles away in the same

[1] Reported in 156 N. W. 255.

---

Note.—As to validity of mortgage, other than railroad mortgage, covering after-acquired property, see note in 21 L.R.A. (N.S.) 843.

As to the effect of assignment of mortgage, by or with mortgagor's consent, to third person after payment of debt originally secured, see note in 27 L.R.A. (N.S.) 111.

general locality afterwards acquired and used by the mortgagor for the same corporate purposes as the property specifically described; and the execution of such mortgage is sufficiently authorized, though the language of the stockholders' resolution is less definite than the description in the mortgage, the form of the mortgage being approved by the board of directors.

### Corporation—mortgage to its directors to secure them.

3. The law imposes upon the directors of a corporation the duty of exercising the measure of good faith towards their corporation which trustees should exercise; and a mortgage made by the corporation to the directors to secure them against liability on their guaranty to a bank made to enable the corporation to obtain money, the transaction being in good faith and entirely fair, and without wrong to others, is valid.

### Same—action of directors will be scrutinized.

4. Such mortgage, when the mortgagees are a majority of the directors, and the presence of a majority of them is necessary to a quorum, and when they participate in the meeting of the board authorizing it, is subject to close scrutiny; but it will be *held* valid upon an affirmative showing that the directors acted fairly and in good faith, without a breach of their fiduciary duty, and with no harm resulting to the corporation, nor undue advantage accruing to themselves.

### Mortgage on after-acquired property—constructive notice in another county.

5. The record in one county of a mortgage containing an after-acquired property provision is not constructive notice to a subsequent encumbrancer of property afterwards acquired by the mortgagor in another county.

### Notice to directors.

6. The directors who pay a debt which they guaranteed, the mortgage being given as security for their guaranty, are not charged with notice of the after-acquired provision in a former mortgage because a director who signed with them and who is one of the mortgagees, but who is unable to pay, was a director and officer when such former mortgage was made.

### Same.

7. Directors who take a mortgage in actual good faith are not conclusively charged by law, because of their relation to the corporation, with knowledge of the after-acquired property provision in a mortgage executed by their mortgagor more than eight years before, and long prior to their becoming stockholders, and from five to eight years before they became directors.

### Subrogation—enforcement of mortgage by assignee.

8. A mortgagor who conveys land subject to a mortgage which the grantee assumes and agrees to pay may pay the mortgage himself and upon such payment is entitled to subrogation; and if upon such payment he procures an assignment of the mortgage to a third person, such mortgage may be enforced by the assignee; and the evidence sustains a finding that a mortgagor so conveying certain real property paid the debt and became entitled to subrogation; and the assignee to whom he procured an assignment to be made by the holders of the mortgage became the legal owner of the mortgage and is entitled to enforce it.

Action in the district court for Hennepin county by plaintiff as trustee for the bondholders to foreclose the mortgage of defendant car company. The case was tried before Dickinson, J., who made findings as stated in the opinion, and ordered judgment for foreclosure. The motion of defendants Laird, Nolan and Shepley to amend the findings of fact and conclusions of law was denied. The motion of defendants Laird, Nolan, Shepley and Cass, trustee, for a new trial was denied. From the order denying their motion for a new trial, defendants appealed. From an order denying its motion to amend the decision insofar as the same determined that defendant Marjorie P. Hale was the owner of the Shepard mortgage to the extent of $9,385 and for a new trial with respect to the question of her rights under that mortgage, plaintiff appealed. Affirmed in part and reversed in part.

*A. B. Jackson* and *John W. Gilger,* for plaintiff.
*Stringer. & Seymour,* for defendants Laird, Norton and Shepley.
*Keith, Kingman, Cross & Wallace,* for defendant Marjorie P. Hale.
*Walter Holsinger,* for defendant Cass.

DIBELL, C.

This is an action to foreclose a mortgage made by the Peteler Car Company to the plaintiff trust company as trustee to secure bonds aggregating $60,000. The property mortgaged is in Minneapolis, Hennepin county, and is conveniently referred to as the University Avenue property. The mortgage was made January 3, 1905. It contains a provision covering after-acquired property. On January 6, 1912, Charles S. Hale, the president of the company, deeded to it property situated

in St. Paul, Ramsey county, designated as tract "D." On December 12, 1912, Hale deeded to the company an adjoining tract designated as tract "E." These two tracts were subject to a mortgage to Barrett & Zimmerman which was a first lien. There is no question as to the validity or priority of this mortgage. Tract "E" was subject to a mortgage for $13,500 to Frank P. Shepard. This mortgage was junior to the Barrett & Zimmerman mortgage. The company assumed and agreed to pay it. Tract "D" and tract "E" are conveniently referred to as the Como Avenue or Como property. Afterwards the company paid $4,500 on the mortgage. It is the contention of the defendant, Marjorie P. Hale, that Hale paid the balance of the mortgage and was entitled to be subrogated to it; that he then caused an assignment to be made to her; and that this mortgage is alive and a lien upon the property prior to the lien of the trust company mortgage.

In the summer of 1913 the company was in need of additional funds. The defendants Hale, Laird, Nolan and Shepley were then directors. An arrangement of this kind was made: Hale, Laird, Nolan and Shepley guaranteed the obligations of the company to the extent of $30,000, and upon the faith of this guaranty the First National Bank of Minneapolis loaned the company this amount. As security for their guaranty the company mortgaged to Hale, Laird, Nolan and Shepley the Como property. Afterwards, the company being unable to pay, and Hale being unable to pay, Laird, Nolan and Shepley paid the bank the $30,000; and they now claim the right to enforce their mortgage.

On October 19, 1914, the company was adjudged a bankrupt upon a petition filed on September 28, 1914. The defendant Cass was appointed its trustee.

The court found that the plaintiff's mortgage covered the Como property as after-acquired property; that Laird, Nolan and Shepley were entitled to a lien upon tract "D" junior to the lien of the Barrett & Zimmerman mortgage and the plaintiff's mortgage; and a lien on tract "E" junior to the Barrett & Zimmerman mortgage, the Hale mortgage and the plaintiff's mortgage; that they were without actual notice of the provision in the trust company mortgage covering after-acquired property and took the mortgage in good faith, relying on the records after an examination made by their counsel; that the Hale mortgage was not

paid by the company but by Hale, and that the defendant Marjorie P. Hale, to whom it was assigned, was entitled to enforce it as a lien upon tract "E." From orders denying their motions for a new trial the plaintiff, the defendants Laird, Nolan and Shepley, and the defendant Cass, trustee in bankruptcy, appeal. On the plaintiff's appeal the contention of appellant is that the mortgage covered the Como property as after-acquired property; that the Hale mortgage was paid by the company and not by Hale and was not kept alive and is not a lien; that the mortgage of Laird, Nolan and Shepley is not a valid mortgage; and that, if it is, it is subject to the lien of the plaintiff's mortgage. On the appeal of Laird, Nolan and Shepley the contention of the appellants is that plaintiff's mortgage did not cover the Como property as after-acquired property; that if it did their mortgage is prior to it because of priority of record, and that the Hale mortgage was paid by the company and is not a lien. On the appeal of Cass, trustee in bankruptcy, the contention of the appellant is that plaintiff's mortgage did not cover the Como property as after-acquired property.

1. In equity, though not at law, a mortgage of after-acquired property, apt words being used to express the intent of the parties, is effective. "The mortgage, though inoperative as a conveyance, is operative as an executory agreement, which attaches to the property when acquired," etc. Borden v. Croak, 131 Ill. 68, 22 N. E. 793, 19 Am. St. 23. The general principle is settled. Holroyd v. Marshall, 10 H. L. Cas. 191, is the leading English case. The cases in this country recognize and apply it. Hickson Lumber Co. v. Gay Lumber Co. 150 N. C. 282, 63 S. E. 1045, 21 L.R.A.(N.S.) 843; Grape Creek Coal Co. v. Farmers' Loan & Trust Co. 63 Fed. 891, 12 C. C. A. 350; Central Trust Co. v. West India Imp. Co. 169 N. Y. 314, 62 N. E. 387; Washington Trust Co. v. Morse Iron Works & Dry Docks Co. 106 App. Div. 195, 199, 94 N. Y. Supp. 495; Maxwell v. Wilmington Dental Mfg. Co. 77 Fed. 938; Mallory v. Maryland Glass Co. 131 Fed. 111.

2. But it is claimed that, recognizing to its full extent the principle that a mortgage of after-acquired property in equity and as between the parties is valid, the description in the trust deed and the stockholders' resolution is not such as to include the after-acquired Como property. The resolution of the stockholders authorizing the mortgage re-

cited that it was necessary to issue bonds "to be secured by a trust deed or mortgage which shall be a first lien upon all the plant and property owned by said corporation, whether present or future acquired." The resolution authorized the execution of "a trust deed or mortgage constituting a first lien on all the real estate and plant of this corporation, together with all buildings and improvements thereupon, and all machinery contained therein, whether now owned, or hereafter acquired." The mortgage conveyed "all real estate, buildings, structures, plant and machinery of said grantor, whether now owned, or which may hereafter be acquired by it in the state of Minnesota, including the following described real estate situated in the county of Hennepin and state of Minnesota, to-wit." Then followed a description of the University Avenue property. A resolution of the board of directors approved the form of the trust deed. In our view the description in the mortgage deed was sufficient to cover the Como property after-acquired; and the resolution passed at the meeting of the stockholders, and that of the directors approving the form, authorized the deed. The Como property was one and one-half or two miles away; but it was in the same general locality. It was used in the manufacturing business which the car company was conducting. It was not isolated property. It was used to carry on the business for which the company was organized. The language of the deed is sufficient, within the cases, to cover after-acquired property and the character of the Como property is such as properly to be included in it. The plaintiff's mortgage is between the parties a lien upon the Como property.

3. The defendants Hale, Laird, Nolan and Shepley were directors of the corporation. The directors of a corporation may loan the corporation money or pledge their credit, and take a mortgage for security, if they act fairly and in good faith, and without wronging others. The defendants acted fairly and in good faith and did no wrong. Our court has stated the rule to be this: "Directors and other officers may deal with the corporation they represent, and of, which they are members, precisely as though they held no official relation with it, and contracts entered into by them with the corporation are valid and enforceable so long as not tainted with fraud. * * * In such transactions the directors are bound by those rules of fairness which courts of equity impose upon

trustees, but they are not forbidden to loan the corporation money, or from guaranteeing the payment of its obligations." Savage v. Madelia Farmers Warehouse Co. 98 Minn. 343, 108 N. W. 296. And see Africa v. Duluth News Tribune Co. 82 Minn. 283, 84 N. W. 1019, 83 Am. Rep. 424; Porter v. Winona & D. Grain Co. 78 Minn. 210, 80 N. W. 965. The doctrine announced and its application find direct support in Hopson v. Aetna Axle & Spring Co. 50 Conn. 597; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. ed. 328; Sanford Fork & Tool Co. v. Howe, Brown & Co. 157 U. S. 312, 15 Sup. Ct. 621, 39 L. ed. 713; Harle-Haas Drug Co. v. Rogers Drug Co. 19 Wyo. 35, 113 Pac. 791, Ann. Cas. 1913E, 181; Webster v. Ypsilanti Canning Co. 149 Mich. 489, 113 N. W. 7; Schnittger v. Old Home Consol. Min. Co. 144 Cal. 603, 79 Pac. 9; Converse v. Sharpe, 161 N. Y. 571, 56 N. E. 69. "Undoubtedly his relation as a director and officer, or as a stockholder of the company, does not preclude him from entering into contracts with it, making loans to it and taking its bonds as collateral security; but courts of equity regard such personal transactions of a party in either of these positions not, perhaps, with distrust, but with a large measure of watchful care; and unless satisfied by the proof that the transaction was entered into in good faith, with a view to the benefit of the company as well as of its creditors, and not solely with a view to his own benefit, they refuse to lend their aid to its enforcement." Richardson's Executor v. Green, 133 U. S. 30, 10 Sup. Ct. 280, 33 L. ed. 516. The case of Taylor v. Mitchell, 80 Minn. 492, 83 N. W. 418, illustrates a situation where the act of the directors in taking a mortgage for their own benefit to secure a prior debt was fraudulent as to creditors; or, if not fraudulent in fact, voidable in the interest of creditors because of the violation by the directors of their fiduciary obligation and the resultant harm to creditors.

4. But it is urged that the mortgage is voidable without a showing of fraud or bad faith or breach of fiduciary duty or resultant injury because the mortgagees were directors and took part in the transaction which resulted in the making of it. The mortgagees were a majority of the directors. They participated in the meeting of the directors which authorized the mortgage and the presence of a majority of them was necessary to a quorum. Some of the cases make a mortgage so executed void; but the weight of authority is not with them. Others make

it voidable. Some of these make it voidable at the election of a corporation or of a stockholder, though fraud or breach of duty or prejudice are not present. This is the rule applicable to trustees and their *cestuis*. A purchase by a trustee is voidable at the option of the beneficiary without a showing of fraud or wrong or prejudice; and courts do not inquire into the honesty of a particular transaction or whether it is prejudicial to the beneficiary. 3 Dunnell, Minn. Dig. § 9934. Others make the mortgage valid if it is affirmatively shown that the transaction is fair, involves no breach of fiduciary duty, and results in no harm to the corporation or others nor undue advantage to the directors, and otherwise they hold it voidable. Cases announcing the different doctrines stated are noted in 3 Clark & Marshall, Corp. §§ 759, 760; 2 Thompson, Corp. §§ 1157-1159, 1227-1232; 5 Dec. Dig. Corp. § 316 (1); 12 Cent. Dig. Corp. §§ 1367, 1401, 1402. In Jones v. Morrison, 31 Minn. 140, 16 N. W. 854, involving the action of a board of directors in voting themselves salaries, the question arising on demurrer to a complaint alleging conspiracy and that the salaries voted were exorbitant, the court said that "their acts in such cases are, *prima facie,* voidable at the election of the corporation or of a stockholder," and that directors "cannot properly act on, nor form a part of a quorum to act on, a proposition to increase their compensation;" and the syllabus was this: "The vote of the board of directors of a corporation, fixing the compensation of any of the directors as officers of the corporation, where it was carried by the vote of the directors whose compensation is so fixed, is *prima facie* voidable at the election of the corporation or of a stockholder." In Porter v. Winona & D. Grain Co. 78 Minn. 210, 80 N. W. 965, it was said that a note executed in behalf of the corporation by its president, in which he was payee, was *"prima facie* void." In Africa v. Duluth News Tribune Co. 82 Minn. 283, 84 N. W. 1019, 83 Am. St. 424, it was said that a note of a corporation made by an officer to himself as payee was "presumptively invalid," and the rule in the Porter case was referred to as a *"prima facie* rule of invalidity." There are ample authorities holding that an obligation or a security, given by a corporation through its directors to themselves, is voidable at the election of the corporation or its stockholders, though bad faith or a breach of the fiduciary obligation of the directors do not attend it; and that courts will not listen

to an explanation that the transaction is fair and not harmful, or even beneficial, to the corporation. This is not a universal holding, applicable to all situations. Thus in Wyman v. Bowman, 62 C. C. A. 189, 127 Fed. 257, a case applicable in its facts and in the principles of law announced to the one at bar, the court said: "It is not true, as a general rule, that the directors of a corporation are incompetent to make contracts with themselves as individuals, or that agreements so made may generally be avoided at the suit of creditors or stockholders of the corporation. The only reason why a contract of this character may be set aside in any case is because directors occupy a fiduciary relation to the corporation, and to its creditors and stockholders.. This relation is analogous to that of agent to principal, and trustee to *cestui que trust,* but it is not of so intimate and confidential a character as either of these. Still it is such a relation of trust and confidence that courts scrutinize with jealous care all transactions between directors as officers and as individuals, and require them to be characterized by good faith and the conscientious discharge of official duty. The vice against which they seek to guard them is that the adverse interest of the individuals may overcome the duty of the officials, and induce agreements and transactions detrimental to the corporation, and unduly beneficial to the individuals. * * * There is no sound reason why individuals who are directors of a corporation may not come to its assistance in days of financial distress; may not make their contracts to loan money to it; to receive security from it for repayment; to accept payment of obligations to them, to buy property from, or sell property to, it; or to do any other act beneficial to the corporation, or mutually advantageous to both the corporation and the individuals. * * * Contracts and transactions between individuals and corporations of which they are directors or officers, which are fair, which are made in good faith, which do not secure to the individuals any undue or unjust benefit or advantage, and in which the interest of the individuals and the duty of the officials work in unison for the welfare of the corporation, are valid and enforceable both at law and in equity." This case finds sufficient support in the authorities. The claim that the directors cannot contract with the corporation when they constitute a majority and are necessary to a quorum is put upon the supposed legal difficulty of their making a contract, act-

ing as representatives of the corporation as one party, and in their own behalf as the other; or, and more usually, upon the ground that their relation with their corporation is a trust relation within the rule which forbids a trustee from contracting with his *cestui que trust*. In the Porter case, where the president of the corporation made a note to himself, and in the Africa case, where the situation was similar, there was the legal difficulty mentioned and there was a fiduciary relation. But in none of these cases did the court refuse to examine the transaction and determine its validity by finding whether it was fair and free of bad faith and of wrong and injury. That instead of a note or simple contract there is a mortgage attended with great formalities in execution is not, in the absence of bad faith or wrong done, a differentiating circumstance; for in each there is a like necessity of two contracting parties and there is the same fiduciary relation. In Taylor v. Mitchell, supra, the transaction involved the giving of a mortgage made by the mortgagees as directors, all participating in the meeting authorizing its execution, to themselves as individuals, to secure a debt then owing them by the corporation; and it was held invalid because it secured to the directors a preference in the payment of a prior debt and because this result came from a violation of their fiduciary obligation. It was not a case as is the one at bar where the directors gave a guaranty of a present loan to the corporation, and took a mortgage to secure themselves, increasing the assets of the corporation by the amount of the mortgage. "Such a transaction," said the court, speaking in the course of the discussion and not by way of direct decision, "if found, upon careful scrutiny, to have been entered into in good faith for the benefit of the corporation, and not for that of the directors, would be sustained by the courts." Then, speaking directly of the facts before it, as we have recited them, the court said: "The relation of directors to their corporation is essentially a fiduciary one, and upon sound principles of public policy they are, as a general rule, prohibited from dealing with the property of the corporation for their own benefit, very much as a trustee is disqualified from purchasing, for his own advantage, the property of his *cestui que trust*. * * * They cannot thus take advantage of their fiduciary relation, and deal directly with themselves, to the injury of others in equal right. If they do, equity will set aside the trans-

action at the suit of creditors of the corporation, or their representatives, without reference to the question of any actual fraudulent intent on the part of the directors, for the right of the creditors does not depend upon fraud in fact, but upon the violation of the fiduciary relation of the directors." In Savage. v. Madelia, supra, a note was given by the corporation to its directors, the circumstances being substantially those in Taylor v. Mitchell, except that a mortgage, which rendered the transaction there considered voidable, was not given; and it was held enforceable, after a close scrutiny of the fairness of the transaction, the court using the language before quoted. We take the rule to be, as suggested in the opinion in Taylor v. Mitchell, and such is the doctrine of Wyman v. Bowman, supra, that a transaction between the corporation and a majority of its directors acting in its execution, whereby they advance money or procure it to be advanced on their guaranty, and take security, if affirmatively shown upon close scrutiny to be fair and not to involve a breach of fiduciary duty and not to result in wrong will be upheld; and that if otherwise it may be avoided. This rule results from the application of the principles stated in the cases cited. Such a transaction as is before us is not uncommon. Corporations find it necessary to borrow money. It is usual for the directors to provide it. Often it can be provided only by their lending their credit. The rule stated and applied to loans of money or of credit by the directors is a sensible and an easily workable one. It is fair. It gives proper recognition to legitimate business usages. It strikes down dishonest corporate transactions and does not hamper honest corporate business.

We assume, but we do not decide, that the trustee in the mortgage and the trustee in bankruptcy are in position to assail a mortgage, where there is no bad faith nor breach of fiduciary duty, though neither the corporation nor any of its stockholders question it. That a creditor, or his proper representative, may for fraud is without question.

5. The trust company mortgage was seasonably recorded in Hennepin county. It was not recorded in Ramsey county until July 15, 1914, and this was a year after the record of the mortgage to the defendants. The Hennepin county record was not constructive notice to subsequent purchasers or encumbrancers of the Como property of the after-acquired property provision. Whether the trust company mort-

gage was in the chain of title of one purchasing the subsequently acquired Como property so that, when recorded, it gave constructive notice, we do not consider.

6. The trust company claims that, since Laird, Nolan and Shepley were directors of the company, the law conclusively charges them with notice of the after-acquired provision in the 1905 mortgage. Laird and Nolan had been directors for six months and stockholders for less than a year. Shepley had been a director for three years and a stockholder since a few years after the organization of the corporation. The mortgage to the directors was made eight years after the execution of the trust company mortgage. The trust company relies upon McCarty v. Kepreta, 24 N. D. 395, 139 N. W. 992, 48 L.R.A.(N.S.) 65, Ann. Cas. 1915A, 834, where it was held that a director of a bank, who was its president, and who purchased paper of the bank, was charged with notice and was not an innocent holder. A number of cases are cited in support of this doctrine. Without criticising it or commenting upon it we are of the opinion that it is not controlling when applied to the facts before us. We are not inclined particularly to favor the preservation of a lien through an after-acquired property clause in a mortgage as against one who is in fact a good-faith encumbrancer. It is only in equity that the mortgagee, through such clause, may reach after-acquired property. The principle of the North Dakota case is stated in the syllabus as follows: "Whatever knowledge plaintiff as a director and officer of the bank at such time had, or ought to have possessed as an official, he will be conclusively presumed in law to have had as a private individual." The court adopts the language of 1 Morse, Banks and Banking, § 137. We find this statement in many cases; but the application of it is often made to situations so different from that of a subsequent purchaser or encumbrancer for actual value that it does not illustrate such a situation. An application of the doctrine so as to result in depriving the directors who took the mortgage of a lien, although they acted in entire good faith and in the interests of the corporation and creditors, is harsh. The trust mortgage was more than eight years old at the time and was executed nearly that many years before they became directors. Under such circumstances we do not

hesitate in holding that from their position as directors the law does not conclusively presume notice in them.

7. Upon the ground of mutual agency notice to one copartner is notice to the copartnership. 1 Bates, Partnership, § 389; Gilmore, Partnership, pp. 318, 319; King v. Remington, 36 Minn. 15, 29 N. W. 352. This doctrine does not apply to subsequent purchasers or encumbrancers. "Where the rights of purchasers for value are involved, however, a con-trary doctrine obtains, and in the absence of proof of partnership or agency the rule appears to be that notice to one of several persons taking title as joint tenants or tenants in common will not by mere force of their relationship operate as notice to the others." 21 Am. & Eng. Enc. (2d ed.) p. 587. See to same effect 39 Cyc. p. 1762; Wade, Notice, § 684. Hale was a director and officer of the corporation when the 1905 mortgage was executed. Conceding that he was charged with notice of it when the mortgage to the directors was made his knowledge, under the authorities cited, is not imputed to his codirectors and co-mortgagees.

8. When Hale conveyed the tract "E" to the company it assumed and agreed to pay the Shepard mortgage of $13,500, and did pay one note of $4,500. Hale's claim is that he had with the company something like $15,000 in cash; and that he drew from the company, of his own money, the amount necessary to pay the balance due upon it and paid it. Hale was the executive officer of the company. If he had money with the company and withdrew it and paid the mortgage he became, upon such payment, subrogated to it. Knoblauch v. Foglesong, 37 Minn. 320, 33 N. W. 865, and cases cited. He procured an assignment to be made to Marjorie P. Hale. If he was entitled to subrogation it is immaterial whether Mrs. Hale paid a consideration. The court found that the payment was made by Hale and that it was not a payment by the company. The evidence sustains the finding. A finding that the payment was made by the company would be upheld. Under the finding made the Hale mortgage is a lien on tract "E."

We reach this result: The plaintiff trust company's mortgage covers the Como property as after-acquired property. The Laird, Nolan and Shepley mortgage is a lien on the Como property subject to the Barrett & Zimmerman mortgage, and subject to the Hale mortgage on

tract "E," and is prior to the lien of the trust company's mortgage. The Hale mortgage is a lien on tract "E" junior to the Barrett & Zimmerman mortgage and prior to the Laird, Nolan and Shepley mortgage and the plaintiff's mortgage.

The order from which the trust company appeals is affirmed. The order from which the trustee in bankruptcy appeals is affirmed on his appeal. The order from which Laird, Nolan and Shepley appeal is reversed on their appeal with directions to amend the conclusions of law so as to adjudge their mortgage a lien upon the Como property with priorities as stated.

Affirmed in part and reversed in part.