# E. A. FOUNTAIN v. ORECK'S INCORPORATED.[1]

July 1, 1955.

No. 36,535.

---

[1]Reported in 71 N. W. (2d) 646.

*Weinberg & Litman*, for appellant.
*Reavill, Jenswold, Neimeyer & Johnson*, for respondent.

CHRISTIANSON, JUSTICE.

Action was brought by plaintiff against defendant Oreck's, Incorporated, to recover a bonus allegedly granted plaintiff by defendant's board of directors and for damages for the alleged breach of an employment contract. Defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict for plaintiff on both claims or for a new trial.

Taking the evidence in the light most favorable to the verdict, as we must, the following facts appear: Defendant is a Minnesota corporation engaged in the retail sale of women's apparel in the city of Duluth. On August 1, 1948, following negotiations with Erwin Oreck, co-owner of defendant corporation, plaintiff was employed as general manager of defendant with an agreement that, if his services were satisfactory to Erwin Oreck, plaintiff could purchase up to 25 percent of the stock of defendant corporation. At approximately the same time that plaintiff was employed, Erwin Oreck borrowed money from one A. B. Polinsky for the purchase of the entire interest in defendant corporation, and as a result of nonpayment of this loan, Polinsky and one W. H. Goodstein each acquired 25 percent of defendant corporation in 1949. Plaintiff also acquired 25 percent of the interest in defendant at this time. Subsequently Polinsky purchased an additional share of stock and by virtue of a voting trust whereby he was made voting trustee of all stock owned by plaintiff and one share owned by Erwin Oreck, Polinsky assumed control of defendant corporation. Erwin Oreck was elected president, Goodstein was elected vice president, Polinsky was elected treasurer, plaintiff was elected secretary, and all four stockholders were also elected directors of defendant corporation.

After plaintiff's employment the business had begun to prosper, but in 1950 friction developed between Erwin Oreck on one side

and Polinsky and Goodstein on the other over control of the defendant corporation. At a meeting of the board of directors on September 16, 1950, at which all four directors were present plaintiff's salary was fixed at $25,000 per annum for the fiscal year beginning August 1, 1950, and in addition to the fixing of salaries the following statement was contained in the resolution adopted by a vote of Goodstein, Polinsky, and plaintiff with Oreck in dissent:

"Director Polinsky pointed out that in addition to the above-stated salaries, bonuses will be paid to the officers before the close of the fiscal year * * *."

Subsequently at a shareholders' meeting on March 16, 1951, Polinsky, Goodstein, plaintiff, and one Wirtanen were elected to the board of directors of defendant corporation and following the shareholders' meeting a directors' meeting was held at which at least Goodstein, Polinsky, and plaintiff were present.[2] At this meeting by resolution of the board of directors plaintiff's salary was set at "$25,000 per annum" and a resolution was passed granting plaintiff a bonus of $5,000 and Erwin Oreck a bonus of $2,500 for the six-month period ending January 31, 1951. Plaintiff did not vote on either resolution.

Following the aforesaid meeting, Polinsky, Goodstein, and Fountain entered into a buy-sell agreement with Erwin Oreck dated March 20, 1951, whereby Oreck was granted an option to purchase the shares of stock owned by the other parties. On April 6, 1951, Oreck exercised his option under the buy-sell agreement and purchased the outstanding shares of the corporation and, consequently, Polinsky, Goodstein, and plaintiff resigned as officers and directors of the defendant corporation. Immediately thereafter, plaintiff attempted to perform his duties as general manager but was prevented by Oreck from doing so. The jury apparently found that

[2]The question of Wirtanen's presence at the directors' meeting was submitted to the jury upon special interrogatories but an unresponsive answer was returned that "He was present at the start of the meeting, but left before the election of directors" which indicates that the jury was confused upon this point. However, if, as plaintiff contends, he could legally constitute part of the quorum for the meeting at which he was granted the bonus, the factual question of Wirtanen's presence need not be decided in this case.

plaintiff did not resign as general manager of defendant corporation but only as secretary and director and that Oreck wrongfully discharged plaintiff and kept him from fulfilling his duties as general manager although plaintiff was always ready and willing to do so.

With respect to plaintiff's claim for the bonus allegedly granted him by resolution at the directors' meeting on March 16, 1951, defendant contends that a quorum of directors was not present since plaintiff as an interested recipient of the bonus could not be counted for the quorum and that the evidence does not sustain the finding implicit in the jury's verdict that the action of the board of directors in granting the bonus was fair and reasonable. In Minnesota L. & T. Co. v. Peteler Car Co. 132 Minn. 277, 287, 156 N. W. 255, 259, in holding that directors of a corporation could become mortgagees of corporate property, this court said:

"* * * We take the rule to be, * * * that a transaction between the corporation and a majority of its directors acting in its execution, whereby they advance money or procure it to be advanced on their guaranty, and take security, if affirmatively shown upon close scrutiny to be fair and not to involve a breach of fiduciary duty and not to result in wrong will be upheld; * * *."[3]

Since the interested directors in that case were necessary for the quorum and even voted on the authorizing resolution, implicit in the decision sustaining the validity of the mortgage agreement is a holding that an interested director can constitute part of the quorum when dealing with his corporation.[4] The rationale of this case is that the relationship of director and corporation is not of such an intimate and confidential nature as that between a principal and agent and a trustee and cestui que trust but a "relation of trust and confidence that courts scrutinize with jealous care all transactions between directors as officers and as individuals, and require them

[3]Cf. Great Northern Exploration Co. v. Mizen, 149 Minn. 440, 184 N. W. 20.

[4]But see, Jones v. Morrison, 31 Minn. 140, 148, 16 N. W. 854, 858. Authority in several jurisdictions is contra to this view. See, 2 Fletcher, Cyclopedia Corporations (Rev. vol. 1954) § 426.

to be characterized by good faith and the conscientious discharge of official duty."[5]

Defendant cites Jones v. Morrison, 31 Minn. 140, 16 N. W. 854, as giving defendant an elective right to void the resolution in this case. In that case the transaction establishing compensation for the directors who also served as officers of the corporation was declared (31 Minn. 148, 16 N. W. 858) *"prima facie,* voidable at the election of the corporation or of a stockholder." The language of the opinion is that such action was "not necessarily valid" and as interpreted in Minnesota L. & T. Co. v. Peteler Car Co. *supra,* the case merely creates a prima facie case of invalidity which does not preclude the court from examining evidence regarding the fairness of the transaction even where the interested directors form part of the quorum.[6]

Although allowance of unrestrained dealing by directors with their corporation is not practicable in view of the possibilities for fraudulent conduct arising therefrom, we can perceive of no compelling policy which would support allowing a corporation to void a transaction with a director from which it has gleaned benefit when it is affirmatively shown that the directors did not breach any fiduciary duty to the corporation and it is affirmatively shown that the transaction was "fair and reasonable." Defendant's attempt to restrict the principle of Minnesota L. & T. Co. v. Peteler Car Co.

---

[5]Quoting Wyman v. Bowman (8 Cir.) 127 F. 257, 273, at 132 Minn. 285, 156 N. W. 258. See, also, In re Dissolution of E. C. Warner Co. 232 Minn. 207, 45 N. W. (2d) 388.

[6]See Barrett v. Smith, 185 Minn. 596, 598, 242 N. W. 392, 393, where the court cited Jones v. Morrison as making the resolution raising the salaries of directors who were also officers "At least" prima facie voidable and then found it necessary to say that there was "no finding that the board as such passed the resolution in good faith believing it for the best interests of the stockholders." See, also, Currie v. School-Dist. No. 26, 35 Minn. 163, 27 N. W. 922, where the dissenting opinion adopted the above view of Jones v. Morrison. The majority opinion was based upon the assumption that the board of trustees of a school district was in the relationship of trustees to the district—a theory rejected in favor of the *sui generis* position of corporate directors. See note 5.

*supra,* to its factual context of a director loaning money to his corporation is ineffective since the same opportunity for fraudulent and unfair actions by the director in dealing with the corporation exists whether he is loaning money and taking security from the corporation or establishing his compensation as an officer or employee. Absent condemning trusteeship principles, the important criteria in such cases are whether the director has dealt fairly with the corporation or has taken advantage of his position. Thus we construe the rule in Minnesota to be that where a director contracts with his corporation the corporation and its stockholders are afforded a prima facie case of invalidity if they choose to challenge the transaction and the burden of proof shifts to the party seeking to enforce the terms of the transaction to show that it was fair and reasonable and entered into by the directors with the best interests of the corporation in mind.

Applying the foregoing principles to the facts of the instant case we find that the directors of the defendant corporation present at the directors' meeting on March 16, 1951, owned 75 percent of the stock of the corporation and that Polinsky and Goodstein who owned 50 percent of the stock voted in favor of the bonus resolution although not benefited thereby.[7] Further, although the evidence regarding the conflict arising in 1950 between Erwin Oreck on one side and plaintiff, Polinsky, and Goodstein on the other side might indicate that the bonus was granted plaintiff by Goodstein and Polinsky in bad faith while contemplating resale of their corporate stock to Erwin Oreck, the actual terms of the buy-sell agreement whereby Oreck obtained his option to buy the stock which was adopted to end the disharmony in the corporate management were not established until after the meeting on March 16, 1951, when the bonus was granted. It appears that the bonus was granted as a result of a resolution passed on September 16, 1950, pertaining to the fiscal year commencing on August 1, 1950, and ending on July 31, 1951, which read:

[7]Plaintiff owned 25 percent of the stock but did not vote on the resolution and Erwin Oreck who owned the remaining 25 percent was not a director at that time.

"Director Polinsky pointed out that in addition to the above-stated salaries, bonuses will be paid to the officers before the close of the fiscal year depending upon the operating results for the year and the contributions of each officer toward those operating results."

For the first six-month period of the fiscal year commencing August 1, 1950, the corporation had shown profits of $60,532 as contrasted with profits of only $92,000 for the previous fiscal year, and the history of the corporation indicates that plaintiff's services were the primary source of its increasing prosperity. Plaintiff thus has clearly shown that the bonus may well have been granted by the board of directors merely as fitting compensation for his valuable services rendered during the year and in fulfillment of the resolution passed on September 16, 1950, upon which plaintiff could have conceivably relied in the discharge of his duties, and that it was not engendered by bad faith or collusion among the directors. Since the evidence amply supports the jury's finding that there was a directors' meeting held on March 16, 1951, and that plaintiff had sustained his burden of proving that the resolution granting him a $5,000 bonus in reward for his contributions as an executive officer and employee during the fiscal year which greatly increased the corporate profits was fair and reasonable, we find no merit in defendant's contention that the trial court erred in denying defendant's motion for judgment notwithstanding the verdict with respect to plaintiff's bonus claim.

■ Defendant also contends that the evidence is insufficient to support the jury's finding that plaintiff was given a contract for hire for the period of one year as general manager of defendant corporation. The resolution setting plaintiff's salary as an executive officer and employee of defendant corporation was passed at the board of directors' meeting on September 16, 1950, and merely stated the amount per annum to be paid plaintiff at a certain rate per month. In view of the evidence[8] regarding the circumstances sur-

[8]In a factual vacuum regarding the intent of the parties to an employment contract, authority is split regarding whether a mere provision for a salary covering a fixed period creates a hiring for an indefinite period terminable at the will of either party, e.g., Brooks v. National Equipment

rounding plaintiff's employment and the beliefs of plaintiff and Polinsky as director of the corporation regarding the term of plaintiff's contract, the issue of the term of plaintiff's employment was properly a question of fact for the jury to be determined by reference to the intention of the parties, the character of the services, and the nature of the employment.[9]

The evidence regarding the intent of the parties as to the employment contract in the instant case is at most conflicting. At the directors' meeting on July 30, 1949, at which plaintiff's salary for the fiscal year 1949 to 1950 was established along with several others the minutes show the following comment:

"Mr. Polinsky further pointed out that the setting of the above annual salaries does not constitute an annual contract for any of the above stated persons, * * *."

Moreover, upon plaintiff's initial hiring it was agreed that, if Erwin Oreck, then co-owner of defendant, was satisfied with plaintiff, he could purchase stock in defendant—an agreement which indicates that the parties were not thinking in terms of a year but an indefinite period at the time of the hiring. However, contrasted with the above evidence are the permissible inferences arising from the following facts: No statement was made in the minutes of the September 16, 1950 meeting when the salaries for the fiscal year 1950 to 1951 were established to the effect that the action did not constitute entrance into a contract for a year which may indicate that the parties intended a contract for the year; the amount of the salary was related to the fixed period of one year;[10] and the unlikelihood that a successful general manager such as plaintiff would intend to be hired for an indefinite term subject to discharge at the will of the controlling interests in defendant. Thus a survey of the evidence does not conclusively establish the intent of the parties in this case.

Corp. 209 Wis. 198, 244 N. W. 598, or raises a presumption that a contract for hire for the stated period was intended, *e.g.,* Southwell v. Parker Plow Co. 234 Mich. 292, 207 N. W. 872; see, 1 Williston, Contracts (Rev. ed.) § 39.

[9] See, Horn v. Western Land Assn. 22 Minn. 233, 237; Moe v. Kekos, 127 Minn. 117, 149 N. W. 8.

[10] See note 8.

Furthermore, we find that the questions resolved in the verdict to the effect that plaintiff was hired as "general manager" of defendant and merely resigned his elected position as secretary of the corporation on April 6 are subject to conflicting inferences regarding the intents and beliefs of plaintiff and Erwin Oreck. Thus we find that the trial court did not err in denying defendant's alternative motion for judgment notwithstanding the verdict with respect to plaintiff's claim for salary lost by reason of his discharge.

■ Defendant further contends with respect to the salary claim that it was prejudicial error for the trial court to exclude its offer of proof that plaintiff negotiated and received $25,000 in "severance" pay from Goodstein and Polinsky in full satisfaction of his claim for salary from April 6 to the end of the fiscal year. The trial court's ruling was based on the theory that the offer constituted an attempt to orally add to or modify the terms of the written buy-sell agreement by evidence of prior negotiations. The buy-sell agreement, which is an exhibit in the case, is between Erwin Oreck, as "party of the first part," Goodstein, Polinsky, and plaintiff, as "parties of the second part," and defendant corporation, as "party of the third part." After reciting the number of shares of stock in the corporation held by each, it states:

"The parties are agreed that it is for their best interests either that party of the first part purchase all of the stock of second parties in said corporation or that second parties or third party purchase all of the stock of first party."

Thereafter the respective stock purchase option provisions—first, to the party of the first part and then, in the event the former is not exercised, to the second parties or third party or their nominees—are set forth. The concluding paragraph of the agreement, insofar as here material, states:

"* * * the parties hereto, each for himself, has and does hereby release and discharge the other from any and all claims, demands, rights, obligations, actions and causes of action of any kind or nature which any of the parties hereto have or may hereafter have against the others, or any of them, by reason of any matters occur-

ring up to and including the date of this agreement, *except* such as are contained in or may arise out of this agreement *or which may appear upon the books or the records of Oreck's, Incorporated,* * * *."* (Italics supplied.)

In support of the trial court's ruling plaintiff contends that, since his salary claim is based on the record of the proceedings at the meetings of the board of directors on September 16, 1950, and March 16, 1951, granting him a contract for one year as contained in the minute book of the corporation, defendant's attempt to show that he negotiated and subsequently received $25,000 from Goodstein and Polinsky out of the latter's share of the proceeds received from the sale of the stock to Erwin Oreck on April 6, 1951, in satisfaction of any claim he might have against defendant corporation for "severance" pay would amount to an oral addition to and modification of the italicized provisions of the buy-sell agreement in violation of the parol evidence rule. We find no merit in this contention. The buy-sell agreement is dated March 20, 1951. It does not purport on its face to be an integration of the negotiations and agreements between Goodstein, Polinsky and plaintiff *inter se* and there is nothing in the record to indicate that such was the intention. Furthermore, we have difficulty in finding any basis for the assertion that the rejected testimony is inconsistent with the buy-sell agreement or that it would add to or vary any of the terms and provisions thereof. However, even if we assume such to be the case, the rejected testimony would be admissible in any event under the well-established rule in this state that a contemporaneous oral agreement may be admitted, not to vary the terms of a written contract, but to explain subsequent conduct claimed to be in accordance with such oral agreement. See, Levering v. Langley, 8 Minn. 82 (107); Rugland v. Thompson, 48 Minn. 539, 51 N. W. 604; 7 Dunnell, Dig. (3 ed) § 3380. Since the offered testimony goes directly to the issue of whether plaintiff voluntarily terminated his employment with defendant, the trial court's exclusion thereof was clearly prejudicial to defendant, and there must be a new trial with respect to the salary claim.

It follows from what previously has been said that the order appealed from should be affirmed as to plaintiff's bonus claim but reversed insofar as it denied defendant's motion for a new trial with respect to plaintiff's salary claim.

Affirmed in part and reversed in part.