**POSSIS CORPORATION, Respondent,**

v.

**CONTINENTAL MACHINES, INC., Appellant.**

**No. C1–88–56.**

Court of Appeals of Minnesota.

June 7, 1988.

Review Denied July 28, 1988.

Thomas A. Keller, III, Corey J. Ayling, O'Connor & Hannan, Minneapolis, for respondent.

Donald R. Harris, Robert W. Kent, Jr., Jenner & Block, Chicago, Ill., Carol T. Rieger, Lindquist & Vennum, Minneapolis, for appellant.

Heard, considered and decided by RANDALL, P.J., and MULALLY and THOREEN,* JJ.

## OPINION

EDWARD D. MULALLY, Acting Judge.

Appellant Continental Machines, Inc. (CMI) and respondent Possis Corporation (Possis) agreed in May 1985 to form Jet Edge Corporation (Jet Edge) to commercially develop manufacturing technology owned by Possis. As part of the agreement, Possis granted Jet Edge a license to use the technology and an option to purchase it.

The key issue is whether the Jet Edge board effectively exercised the purchase option. CMI contends that Jet Edge exercised the option. Possis contends that Jet Edge did not exercise the option, and that ownership of the technology reverted to Possis after the purchase option expired.

Possis brought this action against CMI, seeking damages, a declaratory judgment that Possis owns the technology, and an injunction preventing CMI from wrongfully appropriating the technology. CMI then brought a derivative action against Possis, certain directors of Jet Edge, and others, seeking damages for breach of fiduciary duty, breach of contract and conversion. The actions were consolidated.

Possis moved for partial summary judgment and a permanent injunction against CMI. The trial court granted Possis an injunction. We affirm the trial court's order.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

CMI is a Minnesota corporation in the business of manufacturing machinery. Its products are marketed by DoAll Company. CMI and DoAll share common ownership.

Possis is a Minnesota corporation involved in high technology research and development. Possis developed technology for a water jet cutting system, which uses a high speed stream of water to cut metal, plastic and other materials.

In late 1984, Possis and CMI began discussing a joint venture which would combine Possis' technology with CMI's manufacturing capability and DoAll's marketing network. After some negotiation, Possis and CMI executed several agreements in May 1985.

The key agreement is titled "Agreement to Form Corporation." Under its terms, Possis and CMI agreed to form Jet Edge Corporation. Possis contributed a license to use its water jet technology, and CMI contributed $400,000. Each received half of the voting common stock of Jet Edge.

Possis and CMI also executed a "Shareholder Control Agreement", which provided that each company would elect two of Jet Edge's four directors. The agreement also provided that Possis would designate the chair and chief executive officer of Jet Edge, and CMI would designate the president and secretary-treasurer.

The parties also entered into a "License Agreement" and an "Option Agreement". Under the license agreement, Possis licensed its water jet technology to Jet Edge from May 1, 1985, to September 30, 1987. The option agreement provided that Jet Edge could purchase the technology "upon 90 days written notice commencing on July 1, 1987 and ending upon September 30, 1987."

The Jet Edge venture was not successful. No water jet systems were sold. Although the parties blame each other for Jet Edge's failure, they also apparently agree that the water jet technology is still valuable. CMI claims that Jet Edge exercised its option to purchase the water jet technology at a board meeting on June 16, 1987.

Possis contends that the Jet Edge board failed to exercise the purchase option, that Jet Edge's license and purchase option have expired, and that it has sole ownership of the water jet technology.

All four Jet Edge directors were present at the June 16, 1987 board meeting. The two CMI-appointed directors voted to exercise the purchase option, and the two Possis-appointed directors voted against it. The secretary of the meeting, one of the two CMI directors, gave no effect to the votes of the Possis directors because they were also directors of Possis, and thus "interested" in the transaction. The secretary then declared that the option had been exercised by a unanimous vote of all directors qualified to vote. The next day, the secretary sent written notice to Possis declaring the Jet Edge had exercised its option to purchase the water jet technology. Possis rejected the notice on the grounds that the exercise of the option had not been authorized by a majority vote of the Jet Edge directors present.

Possis then brought suit against CMI, seeking a declaratory judgment that it owned the water jet technology, a permanent injunction preventing CMI from making wrongful use of the technology, money damages, and the imposition of a constructive trust on any profits CMI wrongfully received from use of the technology.

CMI responded by bringing a derivative action on behalf of Jet Edge against Possis, the Possis-appointed Jet Edge directors and others, seeking damages for breach of fiduciary duty, breach of contract and conversion. The two actions were consolidated.

Possis then moved for partial summary judgment declaring it the owner of the water jet technology and permanently enjoining CMI from using the technology. Possis argued, among other things, that if the two Possis directors were disqualified for conflict of interest, the result would not be a 2–0 vote to exercise the option, but rather an insufficient number of directors to constitute a quorum under Minn.Stat. § 302A.235.

The trial court agreed, and granted Possis' motion for a permanent injunction on

the ground that the Jet Edge board had no authority to exercise the option without a quorum present.

On January 11, 1988, appellant filed this appeal seeking review of a December 7 order which granted respondent's motion for partial summary judgment and granted a permanent injunction. On January 22 respondent filed a statement of the case which did not dispute the jurisdictional basis asserted in appellant's statement of the case. On March 31 respondent moved to dismiss the appeal claiming the December 7 order is not appealable and that the proper appeal was from a December 28 judgment entered pursuant to the order. Respondent did not raise the jurisdictional issue in its statement of the case or its brief and instead waited until after the time to appeal the December 28 judgment expired before moving for dismissal. Briefing was completed and oral arguments were heard on April 4.

Minn.R.Civ.App.P. 103.03(b) authorizes an appeal from an order granting an injunction. However, in *Holliston v. Ernston*, 120 Minn. 507, 139 N.W. 805 (1913) the supreme court construed a statute with language similar to Rule 103.03(b) to require that an appeal be brought from a judgment, when an order granting an injunction directs entry of judgment. Although respondent may have a valid argument, this court, by order dated April 15, found that the interests of justice support the granting of discretionary review, and denied respondent's motion.

No material facts are in dispute. The only issue presented on appeal is whether the trial court ruled correctly that the Jet Edge board failed to exercise the option to purchase the water jet technology.

## ISSUE

Did the trial court rule correctly that the Jet Edge board of directors did not exercise the purchase option?

## ANALYSIS

### 1. *The quorum requirement*

A quorum of directors must be present before a board of directors can transact business. Minn.Stat. § 302A.235 (1986) provides, in part:

> A majority, or a larger or smaller proportion or number provided in the articles or bylaws, of the directors holding office is a quorum for the transaction of business.

Jet Edge's articles of incorporation and bylaws provide for four directors, and are silent as to the number of directors required for a quorum. Thus, under Minn. Stat. § 302A.235, a majority of the board (or three of the four directors) constitute a quorum for transaction of business.

All four of the Jet Edge directors were present at the June 16, 1987 meeting where the board voted on the exercise of the purchase option. The trial court nonetheless held that there was no quorum for the transaction of business, because the two Possis-appointed directors were "interested" in the purchase option transaction, and therefore could not be counted toward a quorum.

■ It is clear under both the Minnesota Business Corporation Act, Chapter § 302A, and common law that the Possis-appointed directors were "interested" in the purchase option transaction, because they were directors of both parties to the transaction, Possis and Jet Edge. Under Minn.Stat. § 302A.255, subd. 1 (Supp.1987), a conflict of interest exists if a transaction involves "a corporation and an organization in * * * which one or more of its directors are directors." *See also Westgor v. Grimm*, 318 N.W.2d 56, 59 (Minn.1982).

However, it is not clear whether the "interested" directors count toward a quorum for transacting business. Minn.Stat. § 302A.235, is silent on this subject. Possis argues, and the trial court concluded, that the conflict of interest statute, Minn. Stat. § 302A.255, disqualifies "interested" directors from being counted towards a quorum.

Minn.Stat. § 302A.255 defines when director conflicts of interest exist, and specifies four circumstances when corporate transactions are valid despite director conflicts. The trial court relied on § 302A.255,

subd. 1(c), which provides that a corporate transaction is valid despite a director conflict of interest if:

> (c) The material facts as to the contract or transaction and as to the director's or directors' interest are fully disclosed or known to the board or a committee, and the board or committee authorizes, approves, or ratifies the contract or transaction in good faith by a majority of the board or committee, *but the interested director or directors shall not be counted in determining the presence of a quorum and shall not vote * * *.*

(Emphasis added.)

It is not clear that the provision of Minn. Stat. § 302A.255, subd. 1(c) disqualifying "interested" directors from counting towards a quorum applies to all situations where a director conflict of interest exists. For example, Minn.Stat. § 302A.255, subd. 1(a) provides that a corporate transaction is valid despite a director conflict of interest if the transaction was "fair and reasonable as to the corporation at the time it was authorized" and does not disqualify "interested" directors from counting towards a quorum or voting on the transaction. CMI also points out that, under common law, "interested" directors count towards a quorum for transacting business. *See Fountain v. Oreck's, Inc.,* 245 Minn. 202, 205, 71 N.W.2d 646, 648 (1955); *Minnesota Loan & Trust Co. v. Peteler Car Co.,* 132 Minn. 277, 287, 156 N.W. 255, 259 (1916).

We do not need to determine whether the Possis-appointed directors counted toward a quorum in this case. Even assuming that the Possis-appointed directors counted toward a quorum, and that the Jet Edge board was therefore able to transact business at the June 16, 1987 meeting, the board failed to exercise the purchase option by a majority vote of all directors present.

### 2. *The majority requirement*

Minn.Stat. § 302A.237 (1986) provides:

The board shall take action by the affirmative vote of a majority of directors present at a duly held meeting, except where this chapter or the articles require the affirmative vote of a larger proportion or number.

■ Thus, since the Jet Edge articles of incorporation and Chapter 302A do not provide otherwise, the Jet Edge board could only exercise the purchase option upon an affirmative vote "of a majority of directors present" at the June 16, 1987, meeting. Since all four Jet Edge directors were present at the meeting, the plain language of Minn.Stat. § 302A.237 required an affirmative vote of three of the four directors present before Jet Edge could effectively exercise the purchase option. The CMI directors' two affirmative votes were insufficient to authorize the option transaction.

CMI argues that the plain language of Minn.Stat. § 302A.237 should not govern this case. CMI contends that the statutory provision requiring an affirmative vote "of a majority of directors present" should be interpreted to require an affirmative vote of a majority of all "non-interested" directors present. Under CMI's interpretation of Minn.Stat. § 302A.237, the Jet Edge board exercised the purchase option by a 2–0 vote of the "non-interested" CMI-appointed directors.

■ The terms of a statute must generally be construed according to their plain and ordinary meaning. *Tuma v. Commissioner of Economic Security,* 386 N.W.2d 702, 706 (Minn.1986); *Nadeau v. Austin Mutual Insurance Company,* 350 N.W.2d 368, 373 (Minn.1984); *see* Minn.Stat. § 645.08(1). The plain language of Minn. Stat. § 302A.237 does not support CMI's interpretation. Minn.Stat. § 302A.237 requires a majority vote of "all directors present." There is nothing in the statute to indicate that "all directors present" means "all non-interested directors present."

The "plain meaning" rule may be subject to exception in cases where a literal interpretation of a statute would lead to absurd results or undermine "the general policy and objectives of the law." *Krumm v. R.A. Nadeau Co.,* 276 N.W.2d 641, 643 (Minn.1979); *Kellerman v. City of St. Paul,* 211 Minn. 351, 353, 1 N.W.2d 378, 379–80 (1941). CMI argues that a literal

reading of Minn.Stat. § 302A.237 leads to absurd results which undermine the director conflict of interest provisions of Minn.Stat. § 302A.255. CMI cites only one specific example in support of this argument: a situation identical to this one, where a four-person board of directors is presented with a transaction in which two of the directors are "interested."

CMI contends that, under these circumstances, even if the two "non-interested" directors (in this case, the CMI-appointed directors) believe that the transaction is in the corporation's best interests and want to approve it, they will be unable to do so. Under Minn.Stat. § 302A.255, subd. 1(c), the transaction may be approved despite the directors' conflict of interest if it is approved by a majority of the non-interested directors. CMI argues that even if the transaction is approved by both noninterested directors, as required under Minn. Stat. § 302A.255, subd. 1(c), their approval will be insufficient to authorize the transaction under Minn.Stat. § 302A.237, which requires the affirmative vote of a majority of the directors present or, in this situation, three out of four. Thus, CMI contends, a literal reading of Minn.Stat. § 302A.237 blocks the two noninterested directors from approving a transaction beneficial to the corporation, and nullifies the effect of Minn.Stat. § 302A.255, subd. 1(c).

It is true that a literal reading of Minn. Stat. § 302A.237 prevents two "non-interested" directors from unilaterally approving a transaction on behalf of the corporation at a meeting where the board as a whole is deadlocked. We do not believe that this result is "absurd." In any event, it results as much from the structure of the Jet Edge board of directors as from the structure of Chapter 302A. This situation would not have arisen if the Jet Edge board did not have an even number of members whose loyalties are evenly split between CMI and Possis. Yet this is the corporate structure that the parties chose.

CMI and Possis are sophisticated business entities. They formed Jet Edge under the guidance of competent counsel. CMI and Possis deliberately created an evenly split board of directors, even though it is obvious that an evenly split board would be likely to deadlock under circumstances where CMI's interests diverged from Possis'.

We are not inclined to reinterpret the plain meaning of an unambiguous statute to remedy a problem which was within the parties' own control.

We are also not persuaded that a literal interpretation of Minn.Stat. § 302A.237 undermines the policy objectives of Minn.Stat. § 302A.255, the director conflict of interest statute. CMI argues that the purpose of Minn.Stat. § 302A.255 is to "protect the interests of corporations," and that this purpose will be thwarted if non-interested directors are prevented from approving "interested director" transactions they believe to be in the best interests of the corporation. There are two flaws in CMI's argument. First, assuming that it would protect the interests of corporations to allow non-interested directors to approve corporate transactions presenting director conflicts of interest, it is not clear that a literal interpretation of Minn.Stat. § 302A.237 will prevent them from doing so in cases where the board of directors is not designed to deadlock.

Second, we do not agree with CMI's characterization of the purpose of Minn.Stat. § 302A.255. CMI suggests that Minn.Stat. § 302A.255 is intended to allow approval of transactions presenting director conflicts of interest so long as the proponents of the transactions are non-interested directors, and that a literal reading of the majority requirement of Minn.Stat. § 302A.237 frustrates this policy. However, it is clear that Minn.Stat. § 302A.255 limits, or at least very strictly defines, the circumstances when corporations can approve transactions presenting director conflicts of interest. *See generally* Note, *When Must a Transaction Between a Corporation and its Directors Be Fair and Reasonable? An Analysis of Conflict of Interest Statutes,* 11 Wm. Mitchell L.Rev. 199 (1985). Minn.Stat. § 302A.255 protects the interests of corporations by restricting the circumstances when boards of directors can

approve transactions that may benefit some directors at the expense of the corporation. The statute makes no distinction between transactions supported by noninterested directors and those that are supported by interested directors. We do not believe that a literal interpretation of the majority requirement of Minn.Stat. § 302A.237, even as applied to the circumstances presented in this case, undermines the policy objectives of Minn.Stat. § 302A.255.

■ Since we perceive no obvious policy conflict that would require us to deviate from the clear language of Minn.Stat. § 302A.237, we are constrained to interpret it according to its plain meaning. We hold that Minn.Stat. § 302A.237 requires corporate transactions to be approved by a majority of all directors present at a board meeting, even if some of the directors present are "interested" in the transaction within the meaning of Minn.Stat. § 302A.255.

### DECISION

The Jet Edge board failed to exercise the purchase option at the June 16, 1987 board meeting, because the transaction was not approved by a majority of the directors present, as required by Minn.Stat. § 302.237. The trial court's order granting Possis a permanent injunction is therefore affirmed.

Affirmed.